We'll hear argument next in Case 17-1104, Air & Liquid Systems v. DeVries. Mr. Dvoretsky. Mr. Chief Justice, and may it please the Court, Petitioners had no duty to warn about asbestos added to their equipment years or even decades after its sale. That follows from a well-established tort law principle. Manufacturers are not liable for injuries caused by third-party goods. That tort law principle would not be saleable absent the addition of the asbestos insulation or whatever it is. They're making a product that is useless unless the asbestos is added. And doesn't that make a difference? No, it doesn't, Justice Ginsburg. First, the Petitioners, of course, knew that the Navy was going to use asbestos because the Navy determined that asbestos met its specifications. That doesn't mean that the Petitioners' products were useless without asbestos. Today, those same products are used without asbestos on Navy ships. Why is that? Did they discover something new that's better than asbestos? They did, in fact. Technology advanced and there were different forms of insulation and the Navy eventually transitioned to those forms. And our equipment today is used with non-asbestos forms of insulation. But at least at the time of these sales in question, the manufacturers have a product that, to be used, requires the addition of asbestos. So they know that their sale of this equipment is dependent upon asbestos being incorporated into it. They do know that asbestos will be incorporated by the Navy. However, when the Navy chooses to use a third party's asbestos with our products, our products are not the cause of the injury. And you can look at it like this. How is your product not the cause of the injury? The asbestos, as sold, is perfectly safe. It's integrated. It's whole. It doesn't release molecules. What causes it to degrade is your ship, is your product. Your product heats up to such an extreme degree that it degenerates the asbestos. So it's somewhat incongruous for me to think that you're saying that the harm is caused by the asbestos. The asbestos is in the shape because of what you did to it, meaning your product did to it. It's an integrated product. It's not standing alone. Dreeben. Two responses to that, Justice Sotomayor. First, our product does not cause the asbestos to degrade in any unique way. This is just what happens to asbestos when it's used, just as gasoline is used in a car and eventually needs to be replaced. But our product is not contributing to the harm in any way that is different than what otherwise happens to asbestos. Sotomayor. In normal tort law, if you create a car that has a spark in the tank, and the gasoline, which is what explodes the car, explodes, the consumer is not going to sue the gasoline that caused an injury that the gasoline would otherwise not cause. Why are you any different than the bare-metal car seller? Because in that situation, the consumer might well sue both the car manufacturer and the gasoline manufacturer, because both products contributed together to the harm, whereas an out-of-the-way- That's right. He wouldn't sue the gasoline manufacturer. I mean, you normally run a car with gasoline, and it's normally perfectly safe. Here, you normally run your product with asbestos, and that's not perfectly safe. Well, here you run our product, and our product is safe. It's the asbestos that is causing the harm. Now, the asbestos naturally degrades with use, and then replacing it can be dangerous. That's true. But unlike the defective car, which is creating a spark that a properly operating car should not create, and thereby causing the injury with the gasoline, our equipment is not making the asbestos any more dangerous than it would be. If the other- I'm sorry, but if – are you arguing that this is a special rule in Admiralty, or are you arguing that this is the normal tort rule? We're arguing that it's the normal tort rule that ought to be adopted as a matter of general Admiralty law. As a matter of ordinary tort law, product liability defendants, of course, may be liable for injuries that their products cause. So the defective car that causes a spark is causing an injury. But they're not liable for the injuries that are caused by third-party products foreseeably used with their own. Consider, for example, a tire manufacturer that designs a tire to be used specifically with a multi-piece wheel, and the multi-piece wheel may explode when the tire is installed on it. The wheel manufacturer in that situation can be sued, but the tire manufacturer, even knowing that its tire is going to be used with the dangerous wheel, is not liable. Likewise, a jet manufacturer isn't liable when the seats that are later installed in the plane can cause blood clots, even though you might think of the jet with the seats in common parlance as an integrated product. Sotomayor, in those situations, it wasn't foreseeable. They didn't know it was going to cause a blood clot. I think you – what do I make of the fact that this is maritime law, which is different, and that you claim there's a uniform tort principle, but not every state has the absolute rule that you tout. There's a split of authorities among states as to the extent of liability, if any, for bare metal providers. So what do I do if I'm in a special area with a solicitude for sailors, and I don't buy your argument that we should ignore that principle or overturn it after two centuries of case law on it. Assume I accept the principle. So, Justice Sotomayor, I think there are a few questions embedded in there. Let me try to tease them out. First, in the tire case, in the jet case, you say it's not foreseeable. Quite the contrary. The jet manufacturer makes a passenger jet, of course knowing that seats are going to be used, and it's common knowledge that you can – that can cause blood clots. The tire manufacturer in the Reynolds case that I'm referring to specifically manufactured the tire to be used with this particular kind of wheel that was dangerous. So there is foreseeability, but the point is that as a matter of ordinary tort law, foreseeability alone is not enough to create a duty when you're talking about the foreseeable use of your product with somebody else's product. Second question – sorry, Justice Breyer. Well, the second question, Justice Sotomayor, that I think you asked is about the state of tort law. If you look only at asbestos-specific cases, then there's a split of authority. But there's no reason that you would look only at asbestos-specific cases. You ought to look at the body of tort law as a whole. And when you do, Respondents haven't found a single case, not even one, outside of the asbestos context holding that a defendant is liable for injuries caused by a third-party product used with its own. If that were the law, drywall manufacturers would be responsible for warning about the dangers of paint, the airplane and the seats, the tire and the wheel. Toy manufacturers would be responsible for warning about leaking batteries. Ginsburg. This is different from those in that no one would buy your product but for the use of asbestos with it. And that's not true of the other examples that you've given. I mean, what makes the product desirable is when the asbestos is incorporated, it works in a certain way. Without the asbestos, it doesn't work. Justice Ginsburg, I think that is true of the other examples. Nobody would buy a commercial passenger jet without the availability of seats to be installed in it later by a third party. Nobody would buy drywall without the availability of paint or wallpaper in order to cover it. And so I don't think that our situation is any different from the ordinary tort rule. Breyer. It is somewhat. I mean, this is an area where I had to go back and read the restatement of torts about 50 times. No, it didn't 50, but because this is a negligence case. I don't know that there are special rules here, at least I haven't been convinced to that. So if you look at it as a negligence case and then you look at the restatement and then you look at what the Court ordered below, I do have trouble with one of the things. But do you really have a problem if the manufacturer specifically directed that the product be used with an asbestos-containing material, where he knew that it was dangerous? That's one of the things they want to show. I don't see what your problem is with that. Or that the product was originally equipped with an asbestos-containing part that you could reasonably expect will be replaced, because simply when people do replace things, they do tend to use the kind of equipment that was there before. What's wrong with that one? Now, containing an amide, the third one I don't know, because there's conflict sort of within the restatements. So I thought maybe you should phrase it in your favor somewhat and say, well, he could be liable to where the manufacturer functionally requires. You see, he puts out a product that to work, that to work, you have to use the dangerous thing. Now, I'm pretty sure he should be liable there, but I can see that C in the court of appeals may be read to go beyond that. All right. It's a long question. But really it comes down to what's wrong with A and B, and what's wrong with C if we interpret it as I suggested? So let's take A, B, and C. I think A was required, B was directed, and C was replacement parts. The problem with required is that required just really means foreseeable. Just like the other one. Breyer. No, it doesn't. Required means you tell the person that he better use this product, which is very dangerous, by the way, and you know it, or it won't work. It's like telling people if you have one of those hammers, you know, that shoots nails, and you know the nails are absolutely defective, and you say, you've got to use this product, says the manufacturer, with Smith's nails, which he knows work backwards. Okay. I mean, that's what it seems to me this says. The manufacturer specifically directed that the product be used with an asbestos containing part. First, we did not specifically direct the Navy to do anything that nor could we have. Well, that's what you'll say, but I mean, the other side may say the opposite. And we looked through the record briefly. I'm not an expert there. But I think we only have to do seem to me maybe there's some evidence on their side there. And I don't think that's – I can't read the whole record and know if there's evidence there or not. This isn't a summary judgment case here. You don't need to read the whole record, but if you look, for example, at Joint Appendix 27, it tells you that the Navy was the one that specified the use of asbestos.  Breyer Okay. Fine. Then you'll win. Then the jury will decide in favor of you. And if they come up with some evidence that says it is specifically directed, they will win if the jury believes them. All right? Fine. End of case for us. Anything wrong with that? Yes. Even if a manufacturer, quote, unquote, directs somebody else to do something, the manufacturer doesn't control the Navy. It's ultimately the Navy's choice what to do. It's an asbestos manufacturer's choice whether to supply the asbestos that is dangerous or whether to – Sotomayor Separate defense. Forget the Navy. Let's assume the Navy was not involved. Breyer So any third – Sotomayor Private, any private – Breyer Any third party. Even if you're talking about a private user of ship components, the manufacturers don't have the power to direct them to do anything. They make the choice what equipment to use, and a later asbestos manufacturer or, as the Chief Justice asked earlier on, a later manufacturer of an alternative form of insulation. Ginsburg And by the way, what is the Navy's liability? What is the Navy's exposure to these widows, to seamen who died of cancer? Breyer The Navy is immune under FARAS, but there is a workers' compensation system that the Navy administers that can provide some form of compensation. Ginsburg Very little. Breyer Going back to Justice Breyer's – Kagan Mr. Dabrowski, and this follows on Justice Breyer's, when you say that even when this manufacturer is – or the Navy or whoever else it is, is directed to use asbestos, you are not liable, are you making a fairness argument? Are you making an efficiency argument? What kind of argument is that? Dabrowski It's both a doctrinal argument and a policy argument. As a doctrinal argument, tort law draws the line of liability at the chain of distribution. Kagan Okay. I mean, we could read the restatement and contest that. So I guess what I'm asking is, like, what sense would that rule make? If you think that that's what the doctrine says, tell me why the doctrine says that, because I can't think of a reason, and that makes me think that the doctrine doesn't say it. So here's – this is your opportunity to tell me, what sense would it make to say, even though you direct the use of asbestos, you can't be liable for its harms? Dabrowski Because tort law places the duty to warn and also places liability on the party that is in the best position to control or avoid the harm. And it is the – the subsequent manufacturer of asbestos or of the Chief Justice's alternative to asbestos that is in the best position to control the harm in this situation. That party is also in the best position. Kagan But why is that? Dabrowski Once we put our product out there, we don't control what some third party develops or sells as insulation. Kagan You've directed it to use asbestos, so they're going to use asbestos. Dabrowski The fact that we – if we had directed something, that still doesn't obligate the insulation manufacturer to sell asbestos. If the insulation manufacturer learns, gee, asbestos is dangerous, I either shouldn't sell this or I ought to warn about it or I ought to put money into R&D in order to come up with an alternative, that's all within their control, not ours. And the tort law doesn't do that. Roberts What if you are the only one who knows about it? I mean, the asbestos manufacturer, their scientists haven't discovered yet that it's going to kill you. But you have, and it's the same case. You still don't have a duty to warn? Dabrowski I don't think you have a duty to warn in that situation, but that's also far from this case. There's no – Roberts If the manufacturer is telling people to use asbestos with your product, they don't know that it's harmful, but you do, you have no duty to warn? Dabrowski Perhaps you might in that situation on a different theory have some sort of a fraud claim, but that's not what's alleged here. There's no question here that the Navy knew about the dangers of asbestos and that over time asbestos manufacturers knew about the dangers of asbestos, and again, companies came up with alternatives. So the policy rationale here is to place the burden on the party that has the ability to control the harm, and moreover, the asbestos component manufacturers are the ones that are in the best position to warn. If we had put some sort of a plate on our equipment, first, who knows if it would have been seen down the road as opposed to the package of new insulation that has to be opened and applied, and second, as technology changes, our warning from 1945 might well have become outdated and inconsistent with a state-of-the-art warning provided later. And so that's why tort law puts the liability on the party that actually has the ability to control the harm. Getting back to you, Justice Alito. Breyer Besides the costs of having an additional warning, do you see any other downsides to expanding the scope of the duty to warn in this way? Dabrowski Well, I think that's Breyer I'm really not interested in asbestos and bare metal. I'm talking as Justice Kagan was, as a matter of doctrine and policy. What costs, what downsides are there associated with expanding the duty to warn, at least insofar as we're talking about things that are directed or necessary or inevitably used? Forget about foreseeability for a moment. We normally do, you're right, put the duty to warn with the lowest cost avoider. But sometimes it's expanded, and in some cases it has been expanded in this area, it looks like. And I'm just wondering, what are the negatives associated with that?  Dabrowski Again, outside the asbestos context, I don't think it has been. But to answer your policy question, it's bad first because if you believe that the incentive ought to be placed on the party that can avoid the harm, you dilute that incentive by spreading the liability around. You lead to over Breyer No, that incentive remains. I mean, that's still we're expanding the duty to warn. We're not contracting it. Okay? So that doesn't work. You lead to overwarning, which will lead people just to be deluged with warnings and to ignore them. You create a situation where there really isn't any clarity for manufacturers about what they do or don't have to warn about, because we're talking about tests like directed and required. But what do those really mean? If we talk about required, really what that means is it's really foreseeable. But at some point, there can be another alternative that maybe is 10 percent less effective and 10 percent more expensive. At that point, is asbestos or whatever product we're talking about still required? Or can we say, well, the equipment will run with this alternative, it just won't run quite as well? Is when you put your product into the market and say it requires asbestos, that doesn't even hold as technology changes. So required and specified are indeterminate terms. And one of the costs, to answer your question, Justice Gorsuch, is you're leaving manufacturers at sea, whether we're talking about maritime law or on land, about what warnings they need to provide. I'm sorry. I don't understand your point about the future and a change. If you've warned that asbestos products are dangerous and you should exercise care in removing them, then it's the people down the line who choose to continue doing it, you're off the hook, because you gave them a warning. This is a failure to warn claim. If you did what you were supposed to do, that doesn't take away their incentive to change to a less dangerous product if it's cheaper or if it's easier to deal with. I'm not sure what that – why that increases cost in some meaningful way. Well, it increases cost if you're looking after the fact at a party that didn't think that the law required it to provide a warning and imposing liability. It dilutes the effectiveness of warnings to have too many of them. If you just have warnings about everything, people ignore them. And again, moreover, you may end up with inconsistent warnings. If a company provides a warning about how to handle insulation based on what's known in 1945, that may be inconsistent. It may be the wrong way to handle insulation in whatever form it takes 20 years later. And so – Well, but that's – I don't understand your technology argument. I mean, we're talking about people who were injured at a time where this was what you use, asbestos, right? And you're saying, well, a warning would be bad because 20 years later maybe there's something better. Is that the argument? Well, no. We're saying a warning at that point – the warning is best provided by the asbestos manufacturer. We're not saying that there shouldn't be a warning by somebody and that there shouldn't be somebody to sue. You can sue the asbestos manufacturer if it didn't provide the warning and setting aside any government contract or defense or anything. But the problem is if you have multiple warnings, it dilutes the value of them and it can also lead to contradictory warnings. Once we put, let's say, a plate on our equipment that provides instructions about what to do in 1945 based on the state of insulation then, a few years later, when an alternative comes on the market, that may have to be handled very differently. And it would be so reductive.  Well, I presumably would say when this product is used with asbestos, it creates the following dangers. So if 20 years from now the product is not used with asbestos, everybody knows to ignore the warning. But the warning is good for all the time in which the product is used with asbestos. That's not necessarily. What if 5 years down the road there is different thinking about how best to handle asbestos itself? Then they're not negligent. I mean, that's – see, I've been – tell me where I'm wrong on this. I found it easier to think about this case once I forgot about warnings. And I said the case is not that complicated a case. It's the case in the restatement. Judy loans her car for the evening to Grant, whom she knows is a very dangerous driver. The least cost avoider, of course, is Grant. But nonetheless, Judy is negligent. And the negligence that they're claiming here is taking a thing, a physical thing, which the manufacturer knows is dangerous, and unreasonably putting it out into interstate commerce, perhaps on a boat, perhaps somewhere else. And that's why, if you tell the user he's got to use asbestos, knowing all the relevant things, that's a negligent act. And similarly, if you use asbestos in it on a part that will wear out easily, because people do use the past to judge the present, he'll replace it with asbestos material, and that's an unreasonable act. And the third thing is if you functionally – that's why I thought this third was better for you – you know, you functionally require the use of asbestos in one way or another, then you have performed an unreasonable act. Whether you could cure the problem with a warning or not cure the problem with a warning is a question of what makes it unreasonable and what should a remedy be. I was thinking of it, and now I've listened to you, and I'm not sure I'm thinking of it correctly. So I would like to know what you think. Well, I think the problem with all of those standards is that they don't give manufacturers clear guidance about what they need to warn about. Does a manufacturer of a device that takes batteries, and batteries can leak, does the manufacturer in that situation have to include a warning? Just in case the battery manufacturer doesn't tell you that its battery can leak, I'm going to tell you this battery can leak because I'm telling you to use batteries in my product. Does the manufacturer need to do that? Has it directed the use of batteries? There's no tort case in which, in that situation, people have gone beyond suing the battery manufacturer and actually sued the electronic product manufacturer, because, again, tort law places the burden on the battery manufacturer. It's their product that's actually causing the harm. The duty doesn't extend beyond your own product, and the harm is caused by somebody else's product. So whether it's viewed as a question of duty or causation, tort law puts the liability on the manufacturer, distributor, or seller of the product that actually causes the harm, not just any product downstream that is used with it and in a but-for way can be said to contribute to the harm. Why are too many warnings bad? Why are too many? Why is that bad? You said too many warnings. Why are too many warnings? Explain that to me. For a couple of reasons. One is that overwarning just dilutes the value of warnings. When you get a product that is just plastered with warnings, it leads people not to pay any attention to the warnings that they actually should pay attention to. Well, at most you have two warnings here. You have the equipment warning and the asbestos warning. Does that really – I would think that that's kind of good. You know, it's two warnings. You take it pretty seriously. Well, but if you follow this rule to its logical conclusion, you would have multiple warnings essentially on every part that's connected to every other part within the ship. The propeller manufacturer knows that in order for that propeller to operate, it needs to be connected to a steam-generating propulsion system that uses asbestos down the line. Does each manufacturer at each step of that process need to slap on a warning not only about asbestos, but about every solvent that is used down the line in the ship, about weapons that are on the ship? All of these things are interconnected, and in a sense, the propeller requires them. Otherwise, the propeller is not going to operate. But if you have warnings all the way down the line, it dilutes the value of the warnings. It can also lead to inconsistent warnings, because the party that's in the best position to provide an accurate warning is the party that actually provides the injury-producing good. Not the propeller manufacturer down the line. If I could, I'd reserve the rest of my time. Roberts. Thank you, counsel. Mr. Goldstein. Goldstein. Thank you, Mr. Chief Justice, and may it please the Court. This is a failure-to-warn case under Section 388 of the Second Restatement. That's where the principle is embodied, and that says something that ought to be uncontroversial, and that is if you make a product and the ordinary use or maintenance of that product is going to cause a harm that you know about, then you need to warn about that. And the court of appeals here quite explicitly limited its holding to situations in which you have a product that has a part, and that part is required for it to operate. And so if I could just point us to the first operative sentence of the court of appeals' opinion. It's at 2A of the Joint Appendix. It's not that long. The defense's basic idea, this is bare metal, is that a manufacturer who delivers  that must be added for the product's proper operation. And so it is concerned only there with the case in which you just – these machines will not work if they don't have asbestos in them. But it's worse for that, for the defendants in terms of their liability, because it's been – as has been suggested, it is the operation and maintenance of the machine that makes the danger worse. So Justice Breyer and Justice Sotomayor discussed the situation of how it is that asbestos can be on a shelf and it's not at all dangerous. But if you put it in the machine and you subject it to the temperature of 800 – 850 degrees and you compress it and you leave it there over time, it will degrade to the point that when you have ordinary maintenance, which is specified in the manual for the machine, and you are digging it out and chopping it up, that creates asbestos dust. Asbestos dust is a distinct danger that causes a distinct harm from asbestos as a part. And that is the concern here, and that is when you are maintaining the machine as you're supposed to, as you are directed to by the manual created by the defendants here, you have an injury to which you are subjected. There's a pretty good illustration of that, and that's their own concession, that when they ship the machine with the original gasket in it or when they provide the 992 replacement gaskets that Foster Wheeler did, who's one of the defendants, they're liable. They recognize it's part of their machine. Maintaining their machine is creating the risk. Their responsibility for that, for warning us, telling us, wear a mask in the manual, doesn't change when we get to the 993rd gasket. Now, I take the kind of law and economics take on this to be who's the most efficient party to warn, and I want to explain why it is that they are. But just to pause for a second, that I think is probably the function of maritime law here, and that is, even if you disagreed with us and believed that there was a division in how the common law was applied in these circumstances, there is a special solicitude for sailors that you would say requires the warning by the manufacturers here. And if the Navy believed there was overwarning, the Navy would prohibit giving this warning. Now, why are they the most efficient party to give the warning? First, it's their machine. They're much more familiar with how the parts work than the part manufacturer, because the parts can be used for lots of different machines. What happens with a gasket, for example, is we'll get shipped a set of asbestos board, and it will be cut out to fit inside whatever flange or whatever pipe connection is inside the machine. The people who know how that's going to operate, how much pressure is going to be on it, is the maker of the machine. The asbestos packing, it comes off a shelf, it gets put in the machine. Now, who knows how the machine will affect the asbestos? The maker of the machine. The real manufacturer that's going to point to the cases that he's citing are the makers of the asbestos replacement parts, because he says, examples like, well, you know, this could be used for lots and lots of different applications. So take the poor maker in their mind of the asbestos gasket material or the asbestos packing. It's not necessarily going to be used on a Navy destroyer in a GE turbine. The people who know the effects of a Navy destroyer GE turbine are GE who made the turbine. In addition, who does the company know? Alitoson What if they did know? How far up the supply chain does this go? And suppose that the manufacturers of these component parts knew that this was a custom-made part for the equipment that these manufacturers were going to supply. Would they be liable as well? Shanmugam Likely not, because the – and this is a question in the common law that is dealt with by the integrated product doctrine, and that is, if the component manufacturer advises the manufacturer of the product and it's being used as intended, then the duty to warn is taken on by the manufacturer of the integrated product here, which is what makes this case quite different from a lot of the hypotheticals that we can get to. I did want to just get – if we could just – Alitoson What is the reason for drawing the line there? What is the policy reason for drawing the line at that point? Shanmugam Along the lines of what I've just described, and that is, the manufacturer of the integrated product knows how its product is operating, knows what effect will happen on the parts, and it centralizes the warnings there. And so I could probably put it in very precise terms for you, and that is, if we could stop talking about putting signs on things for just a moment and talk about how this actually operates, they provide a manual on how to maintain their machine, okay? It has pages in it, and it will say, disconnect the flange and take out the asbestos and the like. That is where the warning should be, because that's what we're going to look at. You know, when we are – we're talking about the harm that comes from asbestos that you are taking out of it. And so when my friend was talking about put the warning on the gasket, I actually thought about it and wrote it down, and it says warning. Now, what will this look like in 10 years after it's been, you know, subjected to 850 degrees and is being dug out with a screwdriver? You're not going to see it at all on the actual gasket itself. When you are digging it out. Roberts I'm sorry.  What is the piece of paper? Shanmugam Sorry. I'm sorry. The piece of paper is the gasket. My friend says. Alito That's a gasket? Shanmugam Yes. My friend says put the warning on the gasket. And my point is, this looks great today, but when I'm going to tear it out of the machine and it's going to get ripped up and torn up and turned into dust, which is what our case is about, this turns into dust. It is extremely difficult to read in that circumstance. So the natural party who would provide this warning to us is, at the very least, if a manufacturer knows I'm going to operate the machine and I'm going to maintain the machine by digging this out of its machine, is going to tell me. Now, you can have other cases that are much more marginal cases, but I don't think it's an excuse to say, well, we are 100 percent certain that this machine is going to require asbestos. But if it only was we were 10 percent certain, you wouldn't hold us having a duty to warn. The common law is smarter than that. It's much more practical than that. In the easy cases, when you know as a matter of fact, and it's the premise of liability, that the machine won't operate without this. Well, Mr. Goldstein, that's where I guess I'm having trouble figuring out where the line is. The Third Circuit, as I read it, adopted a foreseeability analysis, which is quite generous, and it could be that 10 percent possibility. Could I just disagree with that premise? Well, at the end of the question, you can do with it what you wish. You can answer it. You can choose not to answer it. We've seen plenty of that in this bench. You could choose to answer another question. Entirely up to you. But a foreseeability analysis might be 10 or 30 percent. We can quibble, okay, but some chance. And then there is, in the case law, a suggestion of inevitability, okay? Certitude. We know it's going to be used. And then there is the third possible rule, which seems to be the traditional products liability rule, which is you warn for your own thing and not for someone else's, okay? Those are the three choices between us. And I think we've been aligning the first two a little bit here in this discussion. And I'm just curious, which is it that you are asking this Court to adopt, and why? Okay. It's the second, because that's the actual rule of the Third Circuit. That's actually why I started with the opinion. So what the court of appeals did is it said the common law recognizes reasonable foreseeability. And my friend likes reasonable foreseeability, despite all the complaints about it. So take the original gasket in the machine. He wants to be held liable only, of course, for reasonably foreseeable disease from the original gasket. What the Third Circuit said is, we are going to adopt the common law rule that you have a duty to warn about your own machine, and that's going to include parts and replacement parts that must be there, that are required and the machine will not operate without them. Then you are responsible for the reasonably foreseeable harm that comes from that. It did not say that you are responsible for replacement parts that are reasonably foreseeable to be used with your machine.  The opinion, right? I'm just talking about the bare metal portion of the opinion. Put aside the replacement parts. I think we have three possibilities before us, and you're saying the second one is the one you'd have us adopt. And that is, it is inevitable. So I do want to say that I do disagree respectfully with your understanding that the ordinary rule is that you're responsible only for the thing that you make alone without regard to replacement parts. And my friend, I think, is just confused. He says we haven't cited any cases. We have cited the Hoyne case, for example, and that's a situation in which you have an asbestos grinder and you have a wheel on it and the wheel runs out, and you replace it with an identical wheel, and there is a risk that the wheel will explode. Of course, your duty to warn that, hey, my machine, you know, it tends to blow up the wheel, remains your duty even if you replace the wheel. We also have the Macias case. So the first one was from the California court of appeal. The Macias case is from the Washington Supreme Court. That's a respirator's case. So you make a respirator and it exposes people to the thing that, you know, benzene or asbestos or whatever it is that you're trying to protect against. You have a duty to warn that you know that that device is only going to operate when it is that's exposed to the hazardous chemical. That duty exists just as in the gasoline in the car. Breyer. Breyer. Can I go back for a second? Because now I did have this kind of question. I suddenly went back to the court of appeals' opinion, and it says that the product may be held liable, the manufacturer, if the facts show the plaintiff's injuries were a reasonably foreseeable result of the failure to provide a warning. Then it gives three examples. Well, I don't have any problem or I probably don't have a problem with the three examples, but it doesn't say they are exclusive. And so I think that the perhaps one of the things that the other side is worried about is if you read that sentence without limiting it to the three examples, it would create the horribles that they show up. I understand. And I think you can take some comfort from my reading from the first operative sentence of the court of appeals' opinion, that it's talking about only parts that have to be there for the machine to operate. When the court of appeals, and this is going to be at 16a of the petition appendix, says we've given you three, we're not saying these are, you know, all of the possible examples, I just think it was being sensible in a very common law way. But it was excluding, if I could just be precise about one thing, it was excluding and it didn't, and so you would know what the actual consequences of this are. There is a leading district court opinion that gets cited here by the court of appeals, and it had a fourth, and that is knowledge. If you know that the part, the asbestos part will be in it, but you didn't require it, and it wasn't absolutely necessary for the machine to work, and the court of appeals, I think, was avoiding passing on that question, which isn't in the case, and I think you fairly can, too. Kagan One of the horribles that Mr. Dvoretsky threw out at the end of his argument was like a flashlight with batteries. How should that come out? If the flashlight is designed in a way that it punctures the battery, okay, in the same way that maintaining this machine causes the asbestos to turn into paper. Kagan No, you just put the batteries in, a normal flashlight, but it doesn't work. You can turn it on, it doesn't work, unless the batteries are in there. Gannon No, I think that in that situation, the mere fact that batteries are intrinsically dangerous doesn't create the duty to warn. It is, I think, a special feature of this case that the machine itself contributes to the liability. It ships with, very frequently, asbestos gaskets and other material, and it cannot operate without it. It's the combination of those things. I'm confused, then, because I haven't used a flashlight without a battery very often. I mean, it seems inevitable. The other example that we're given is the manufacturer of the ashtray, who inevitably knows it's going to be used with some sort of tobacco product, hopefully. And extending the duty to warn in those cases, some of the concerns that your that might deter innovation and raise consumer cost, needlessly, seem to have some purchase to me. So help me out. I'm stuck where Justice Kagan is. Gannon Okay. I think their better example is flashlights rather than ashtrays, because you can use ashtrays for other things, so I don't want to avoid the harder hypothetical. And that is, if you have a flashlight and you know, as the manufacturer, that the batteries in them are going to leak out and put acid on your hands, I actually do think, on reflection, that that manufacturer needs to warn about that, right? So it is technically the case that the battery inside is leaking, but you're operating a flashlight, and you're going to be exposed to that risk. I would think that you would want the manufacturer of the light to warn people, while you're holding this flashlight, you could be exposed to acid. Now, you may have So you just changed the answer. I did. Okay. So Just making sure. Absolutely. Now, I will say that another part of my answer is that this is the easier case, because the product actually contributes to the injury. You may have lots of defenses there, including that there were other warnings that were already given. You have a sophisticated user that already knows about it, that sort of thing. But I actually think that in that precise hypothetical, it ought to come out that way. I would want to know. Mr. Goltsy, having just recently bought a battery, the flashlight told me to not store it with a battery. Okay. So now, but can you show me why Can you show me a case that would have suggested Sure. That would have come out to that conclusion. I always assume that when manufacturers do things, it's because somebody says Some lawyer told them to. And sometimes they are overprotective. It's true. So the two, I think, that are quite on point are the Hoyne case and the Macias case that I gave. So the California Court of Appeals and the Washington Supreme Court. And I do think I should, you know, to be fair to my friend, address the other examples. And so he gives the airplane. Okay. So you manufacture an airplane. It is a few things about that. First, airplanes actually do work without seats. You know, if not, somebody better tell FedEx, which is shipping things all over the country. But at the very least, they work with lots of different kinds of seats. That's why some people fly Emirates and not Spirit, because the sum of the seats will be much, much closer in and have a much greater risk of injury for them. And that's why we don't say, as the Court of Appeals did here, that the airplane will only work in a situation in which you are going to be exposed to it. But I'll give you another airplane hypothetical that I would hope come out this way, and that is the airplane manufacturer attaches Rolls-Royce engines. You know that working on the engine can expose you to terrible shock and being killed, or gasoline will pour out of it, or oil will pour out of it. I hope that we want the airplane manufacturer to warn about that, because that plane will not operate without those engines, and you are going to be exposed to that risk in the course of maintaining that machine. That's the much more analogous hypothetical. But what about the ashtray? You didn't answer the question. Oh, I'm sorry. I had said that the ashtray could be used for a lot of different things. That's the – I mean, that's – your answer is, well, you know, the manufacturer of the ashtray is off the hook because it's possible somebody might use it for some purpose other than – than smoking. No. I just tried to give – among the distinctions, it's certainly that. And so it wouldn't fit within the third jury. What if I don't think that's much of a distinction? Okay. Then there are others. And that is, the ashtray does not give you cancer. Okay. The ashtray does not actually contribute to your injury. What you have is you have a toxic product that you're making a choice to use that you are putting down. It would be like saying this, and I think it's a great example for us because it highlights why we are not saying they are responsible for every harm from asbestos, including this asbestos. It would be like us saying, your machine only works with asbestos. You're liable because I got sick because the storage room had the asbestos in it. We're not just saying kind of but for causation that there was a relationship between them. You can put your cancer-causing cigarette down in the ashtray and not be liable for it. But if it is the case – I'll give you an example. What if the ashtray is made of paper? Okay. If the ashtray is made of paper so that if you put something lit in it, they will cause – it will cause combustion and it will burn, then I think – But that's different because then your product, the actual product that you're manufacturing is dangerous. Well, Your Honor, none of this is about the product. In and of itself. I don't – I mean, kids make paper ashtrays and we all – the world goes on. I don't think they are intrinsically – probably kids shouldn't be making ashtrays. But I'm just saying – I could. It may not be as good as my gasket. Just so I can follow, the difference between the flashlight and the ashtray example? The difference between the flashlight and the ashtray example is that in the necessary course of using it, if you're going to be exposed to harm. And so I suppose on that axis, it is the case that the ashtray can be used for other things. But we are – I did think that it was quite important that we aren't saying that they are – they have a duty to warn that kind of encompasses everything that the asbestos manufacturer would because the asbestos manufacturer may have other warnings and other harm that it causes. Our harm is one that comes distinctly from the fact that this machine is just – it's not bare metal. It's dead metal. It is just sitting there as dead weight. And if – and it may have – What if – let's just take a hypothesis. Sure. Okay. That the ashtray, a jury will find, in my hypothetical case, that the particular nature of its design meant that the manufacturer knew it would be used with tobacco products, inevitably. Okay. Then what? So there are a lot of different defenses as well, including the sophistication Just stick with the hypothetical. I am sticking with the hypothetical. I mean, I take the hypothetical to be, you know, will the ashtray make it I know there are defenses, and there are going to be defenses for General Electric or whomever in this case, too. I'm not asking about that. Is there a duty is what I'm asking, okay, that you could get to a jury on duty? Yeah. That's my question. The – I think that there is not a duty. I think that the important distinctions are that here the actual machine creates the special and distinct risk, and in addition, there is in the common law this understanding about whether you would be an efficient party or there's a much better party to warn. And there we have obviously the situation. I think the hypothetical resonates because there is so much knowledge in the community about the harms from cigarettes that come from warning about cigarettes. But, you know, to take the battery example from the flashlights, there are other sensible instances in which we say, look, if using the machine is going to expose you to a distinct risk, or at the very least when using the machine is going to create the risk. What is it that we think the – you know, the asbestos manufacturer, not knowing that it's going to be used in this GE machine, not knowing that it's going to be 850 degrees, that this certain pressure will be out, not knowing that GE will instruct to how to maintain the machine. So to give it, you know, again, to put it in that way. Alito, if the question is who is the best party to warn, in this case, why isn't that the Navy? Now, I know the Navy isn't liable because of a separate doctrine, but why isn't the Navy? Why wasn't the Navy the best party to warn? The Navy was aware of the hazards long before the ships were built. It wanted to use asbestos. It ordered these products knowing that they would have to have asbestos on it. It had control of the sailors. Yeah. So what the Navy did, and so I – it is a very specific question about the Navy. What the Navy did is it required the manufacturers to provide manuals on how the machines are maintained. It said to the manufacturer, you know how to maintain your machine. The Navy isn't the party that's most expert about that. It's not the one that tested the machine and the like. Yes, there were specifications that it had to meet, but the party that would produce the manual, the party that would know that this was going to degrade, the party that – and if I could just give you another precise example, because I'm not sure the briefs, you know, elucidate this enough, what happens here is you have two pieces of metal. That's why it's called the bare metal defense, and in between them is a gasket, just like a washer in something in your house, okay? This thing cannot operate unless it's sealed with something that has a little bit more flexibility to it, and that's why you have a gasket, and that's why – the reason it's asbestos is it's the only thing in the relevant period of time that would work. And so in that situation, when you, the manufacturer, are designing your machine and knowing what kind of gasket will I be able to use, it's going to have to be an asbestos one. But not just that, I know that when you break the machine open, right, to do maintenance on the machine, we have to get inside it, I know you're going to have to scrape that off and make it perfectly clean in order to reseal it, given the tolerances of my machine. Roberts. Counsel, I've been thinking about your plane and the Rolls-Royce engine, and I want to make sure I understand it. The engine can cause all sorts of dangers when it's running, and your theory was that the plane manufacturer is liable to when those dangers injure someone? Your Honor, what I was – the example I was giving is if you are doing maintenance on the engine, okay, under the Integrated Product Doctrine, the responsibility there is of the airline manufacturer. It may provide another manual from the Rolls-Royce company, but if the airline is providing a manual on how to maintain the machine, and it includes the engines, we want it to warn about the dangers of the engine. I would have thought in that case, it's a point your friend on the other side made. It does seem to me that it would make a lot more sense for the engine manufacturer to be the one giving warnings about how its product works. Now, I'm not quite sure why that's different than the case before us, but it does strike me as a different situation. Well, I do think that the way the Integrated Product Doctrine has worked, and I think we can also cut through the ambiguities and what the marginal cases are, because they concede liability as to the gaskets that ship with it originally. So we know we're dealing with an integrated product there. The Integrated Product Doctrine works as saying if you build something into your machine and it is going to operate as intended, it is the manufacturer of the integrated product, the turbine, the pump, in our examples, that has the common law duty to warn. It's a flashlight, an integrated product, then, with the batteries? I think it's probably going to be the same. Or what's the theory? I think it is, because we're talking about where parts of it are— And the ashtray is not an integrated product with the tobacco. Is that the—I just want to make sure. Is that the distinction? So I understand— That is among the distinctions. That's right. And part of it would be probably whether it is the case that these things ordinarily ship with batteries. Okay? If it's the case that these products come with batteries, so, you know, they are perceived as being one integrated thing, if they are instead understood to be two separate things, it would be a different matter. The easy case, I would say. We are having the struggle that the common law has had— So shipped with, not inevitably used with? No. I think that it is shipped with because it's inevitably used with. It's no accident. It just wasn't like we love asbestos. I mean, there was just nothing else— Well, but here, here, they didn't ship the asbestos with it, other than your gasket part. I mean, the insulation was added later. That is — so just to be clear, our case rests quite heavily on the internal gasket that turns to dust and the internal packing that turns to dust. That was overwhelmingly provided with the machine, because especially as to the gaskets, you know, the metal will just rub up against it. There is the question of the non-replacement external insulation, and so this could be looked at differently. We do think the result is the same, because the machine will not operate as intended without the external insulation for two reasons. The most important one is the machine is built to keep heat in the system. If you don't have asbestos insulation, all the heat goes out of it. Everybody knows the machine will be covered in insulation. The reason it doesn't ship with it is because it is just very, very difficult to preinstall blanket insulation rather than hanging it on once it gets to the ship itself. I will say there is also a marginal case that my friend sometimes points to, and that is you ship the parts of the machine, and there's where you put in the gasket and the packing. That's because some — these machines can be so big that the Navy can require that they be assembled shipboard, but that doesn't make them any less part of the original machine. Breyer, the part there that I started off, whatever my track was, is in the restatement where it says on — you're talking about this case that you're talking about, I think, right now. The law itself must take care to avoid requiring excessive precautions of actors relating to harms that are immediately due to the improper conduct of third parties, even when that improper conduct can be regarded as somewhat foreseeable. So that says, oh, well, we have to figure it out. And that's why I sort of at sea, but I thought, well, maybe that should be interpreted as to require in your third situation, not the first two, that the manufacturer functionally requires that a dangerous item be put to work. And you all can argue about whether that's true. I might not say the manufacturer functionally requires. That is, it is functionally required in the passive voice. Because I just — if they're making a machine to a Navy specification, and the machine will only operate with asbestos, I don't think that gets rid of the duty to warn, unless the Navy tells them not to warn. That's the Boyle defense. So I do want to be clear that I think that there are a couple of defenses, government contractor and superseding cause, that essentially the other side's argument is, you know, we got halfway there. You know, we didn't actually have the Navy forbidding us from giving warnings, and we didn't actually have an unforeseeable superseding cause. But kind of the mix of those as a policy matter is enough to put the liability off on someone else. There should be a real consequence to the fact that they can't meet the standards of the Court's decision in Exxon v. Sofec on superseding cause or the government contractor defense. When those requirements aren't met, that's because we want the liability on the original party here, and that's this party. It is creating the danger. Thank you. Roberts. Thank you, counsel. Four minutes, Mr. Dworawski. Dworawski. Thank you, Mr. Chief Justice. I think that one of the challenges of this argument is creating an administrable rule based on these terms like required, directed, inevitable. And I think the back and forth shows that those terms, when you actually try to apply them, are very difficult to apply and will not lead to predictable rules that will tell manufacturers what they need to do and that will promote the interest of maritime commerce. When you talk about the machine not operating without it, in our case, the machines would operate without asbestos. They just would not operate as efficiently. And Joint Appendix 104 and 128 discuss a couple of alternatives that maybe did not meet the Navy's specs, but that would have allowed the machines to operate, and again, they operate without asbestos today. If we're talking about directed, I think it's helpful to look at the what an example of a manual in this case actually is, and it's in the Third Circuit Joint Appendix at 372 to 404. All it is is a series of sketches that show where the asbestos would go. In other words, this shows the foreseeable use of asbestos by the Navy, but it's not providing specific step-by-step directions saying you must use asbestos and here's how to use it. So when we talk about directed, what does that mean? And it's important in maritime law in particular to have predictable rules in order to promote maritime commerce. Second point, my friend talks about how our machines created the risk. This is not a combined-use sort of case where a flashlight might puncture a battery, and in that situation, of course, the flashlight manufacturer would be liable for contributing to the harm. It was not argued below, there's no evidence in the record that our machines contribute to the harm in this way, and it's also not true, first because of the point I made earlier that this is just the natural degradation of asbestos when it's used, not any unique harm caused by our machine. Ginsburg-McCabe. But you just said it sounds to me like those would be issues for trial. But you say you should have summary judgment and no trial based on the, what is it, the Bayer something doctrine. If the theory, if it were argued in this case that there was a genuine issue of fact about whether our equipment contributed to the harm in the way that a flashlight punctures a battery, that might well be a fact question, but that's not been pled or argued, and there's no genuine issue of fact on this record, because that's simply not what's been argued below. Moreover, if you look at our system, while the system as a whole generates heat, not all equipment in the system even does that. The turbine, for example, spins around but isn't generating any appreciable amount of heat, and so the idea that every manufacturer in this integrated system is liable for over-warning would just, again, lead to over-warning and excessive liability. With respect to the cases that Mr. Goldstein cited, the Hoyne case is one in which the grinder caused the wheel to explode because the particular wheel was incompatible with the grinder, and so in that situation, there, of course, might well be a duty on the part of the grinder manufacturer to say don't use this wheel. The Messiah's case did not involve later added components, and the same State supreme court there reaffirmed its earlier decisions in the Bratton and Simonetta cases, which did involve later added components, and it's also worth emphasizing that both of those cases are asbestos-related cases, and Mr. Goldstein hasn't cited a single case from outside the asbestos context involving, say, a flashlight manufacturer that needs to warn about the batteries. The fact that flashlight manufacturers might do that as a matter of being overly cautious doesn't mean that the law requires it and doesn't mean that tort law policy is well served by it. Roberts. Thank you, counsel. The case is submitted.